**FILED**
**Dec 06, 2024**
**09:20 AM(ET)**
**TENNESSEE COURT OF WORKERS' COMPENSATION CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KNOXVILLE

| | |
|---|---|
| JOHN BARKER, | ) Docket No. 2023-03-6535 |
|      **Employee,** | ) |
| v. | ) |
| LOUDON COUNTY RENTALS & | ) |
| MINI STORAGE, INC., | ) State File No. 70466-2022 |
|      **Employer,** | ) |
| And | ) |
| WESCO INSURANCE COMPANY, | ) |
|      **Carrier.** | ) Judge Pamela B. Johnson |

---

## COMPENSATION ORDER

---

John Barker injured his lower back and hip at work, and Loudon County accepted the claim.[1] He now seeks additional temporary disability and permanent total disability or alternatively permanent partial disability to include his original award and increased benefits. Loudon County seeks a credit for the overpayment of temporary disability benefits and an offset for his old-age Social Security retirement benefits.

Based on a preponderance of the evidence, the Court holds that Mr. Barker is entitled to additional temporary disability benefits and permanent and total disability benefits. Loudon County is entitled to a credit for the overpayment of temporary disability benefits and the offset for Mr. Barker's old-age Social Security retirement benefits.

### History of Claim

Mr. Barker worked as a service technician for Loudon County.[2] He injured his lower back and hip after lifting a machine on September 15, 2022, and reported the injury the same day. Loudon County authorized medical treatment with panel-selected

---

[1] Loudon County is now known as River City Equipment Rentals, a part of Empower Group.

[2] At the time of the injury, Mr. Barker was 63 years old and did not have a high school diploma or GED. His weekly compensation rate was $749.58. Beginning May 2024, he received $1,297.00 per month in old-age Social Security retirement benefits.

1

physician Dr. Patrick Bolt. Dr. Bolt diagnosed a left L1-L2 disc protrusion, which he treated conservatively. Dr. Bolt placed Mr. Barker at maximum medical improvement on January 8, 2024, assigning a 7% permanent impairment and permanent restrictions.

*Restrictions and efforts to return to work*

The parties disputed the extent of Mr. Barker's disability, both temporary and permanent. He did not return to work for any employer after his work injury.

Loudon County paid Mr. Barker temporary total disability benefits from September 30, 2022, through September 28, 2023, or 52 weeks, at a weekly rate of $799.74. Loudon County claimed it overpaid $50.16 per week and is entitled to a credit of $2,608.32. Mr. Barker contended that he was owed temporary disability benefits from September 29, 2023, until the date of maximum medical improvement on January 4, 2024, or 14 weeks and 4 days less the overpayment credit.

On June 19, 2023, Dr. Bolt assigned restrictions: alternate sitting/standing and no lifting over 30 pounds maximum. These restrictions were continued on August 4 and September 18.

Loudon County notified Mr. Barker on September 26 that it would temporarily accommodate his restrictions by modifying his regular job as a service technician. It identified tasks within his restrictions that he could perform including pressure washing equipment and picking up parts. It instructed Mr. Barker to report to work on October 9.

Mr. Barker testified that pressure washing equipment is a difficult job because the pressure washer pulls and jerks. He also said most parts weigh more than 20 pounds. Thus, Mr. Barker did not believe that he could perform the modified duty. His supervisor Ryan Kendrick testified that the modified job tasks met the weight restrictions.

On October 3, Mr. Barker reported to Dr. Bolt that he was not doing well, and he did not feel he could return to work. Dr. Bolt revised his restrictions: no overhead work, no outstretched arm use, no heavy gripping, no use of vibrating tools, alternate sitting/standing, no lifting over 5 pounds frequently or 20 pounds maximum, no stooping/bending/twisting, and no use of hazardous machinery.

Loudon County made another offer of modified duty on October 12. The job tasks within his updated restrictions included consulting and delivering small equipment; performing inventory and organizing shelves; checking fuel and hours and cleaning trash out of equipment; cleaning inside of company vehicles; sweeping, mopping, and restocking bathrooms; organizing lot with mini skid; checking air filters

2

in small equipment; scissor lift maintenance; stuffing envelopes and filing; measuring; sorting tools; and cleaning shop and office including wiping down walls and picking up trash. Mr. Barker was instructed to report on October 23.

On November 27, Dr. Bolt answered a questionnaire from Mr. Barker's counsel that asked Dr. Bolt to consider whether Mr. Barker could perform the job tasks in Loudon County's return-to-work offer. Dr. Bolt noted that Mr. Barker was unable to perform those jobs within the restrictions assigned on October 3, stating it "[a]ppears no bending would restrict some items."

Loudon County's counsel wrote Dr. Bolt, noting the September 18 restrictions did not list bending. Dr. Bolt responded that, although those restrictions did not identify bending, Mr. Barker would be unable to perform the listed duties. Dr. Bolt said Mr. Barker saw him on October 3 to discuss restrictions "due to difficulty with his condition only." Dr. Bolt explained the change in restrictions from September 18 to October 3: "MRI showed bulging discus at L1-2 and L5-S1. P[atien]t clarified with me his limitations and work requirements which I was unaware of at the 9/18/23 visit. P[atien]t's FCE results are his permanent restrictions."

For his part, Mr. Barker testified that the equipment was too heavy for him to deliver. He said inventory required climbing a ladder to count parts on shelves. The maintenance and cleaning tasks required him to climb, bend, and twist, and when considering each task, he said he was not physically able to do the work.

Mr. Kendrick disagreed. He said inventory would not require Mr. Barker to climb a ladder. Mr. Kendrick testified that Mr. Barker would not be asked to bend or twist to perform the maintenance work. Instead, a coworker would check the equipment and then tell Mr. Barker what to record. However, Mr. Kendrick acknowledged that cleaning, mopping, and sweeping the bathrooms or cleaning equipment would require bending and twisting.

Dr. Bolt adopted these permanent restrictions recommended in the functional capacity evaluation performed on January 8:
- occasional sitting 30 minutes continuous up to 2 hours per day,
- occasional standing 10 minutes continuous with support up to 2 hours per day,
- occasional walking 10 minutes continuous with support up to 2 hours a day,
- occasional bending 5 minutes continuous up to 1 hour per day,
- no twisting,
- occasional squatting 30 seconds continuous up to 15 minutes a day,
- no crawling,
- no kneeling,

3

- occasional balancing 10 minutes continuous with support up to 2 hours a day,
- occasional stair climbing 10 minutes continuous with support up to 2 hours a day,
- no ladder climbing,
- occasional driving 30 minutes continuous up to 2 hours a day,
- occasional grasping 30 minutes continuous up to 2 hours a day,
- occasional fingering 30 minutes continuous up to 2 hours a day,
- occasional reaching overhead 30 seconds continuous up to 20 minutes per day,
- occasional reaching forward 30 second continuous up to 20 minutes per day,
- no reaching down,
- occasional pushing 20 pounds up to 6 feet, and
- occasional pulling 20 pounds up to 6 feet.

The evaluator noted Mr. Barker was "able to work part time at a job that would give him the freedom to sit and stand as needed. Performing seated level applications such as answering phones, sorting, or putting mechanical parts together using his hands." In the assessment, the evaluator commented that Mr. Barker is a "high fall risk as evidenced by his poor balance," and "his numbness and tingling in bilateral legs and feet as well as foot drag, and back pain are limitations to him for all standing level activities as well as prolonged sitting."[3]

On June 19, 2024, Loudon County made a full-time return-to-work offer based on Mr. Barker's permanent restrictions. The offer listed the tasks Mr. Barker would be asked to perform, which included: pressure washing equipment with a chair accommodation, physical inventory, sweeping and mopping, small equipment repairs, stuffing envelopes, helping customers, painting and sanding, general cleaning, trailer inspections, sweeping gravel out of the road, and truck cleanup.

*Vocational proof*

Both parties sent Mr. Barker for a vocational disability evaluation. Mr. Barker relied on Michael Galloway, and Loudon County on Bentley Hankins. Both reviewed Mr. Barker's medical records, interviewed him, and performed limited academic testing.

Mr. Galloway noted Mr. Barker did not receive a high school diploma or earn a GED, but he previously held a commercial driver's license and had on-the-job training as a heavy equipment operator. His past work included skilled, medium to heavy work. The

---

[3] Dr. Bolt later testified that the permanent restrictions of grasping, fingering, reaching overhead and reaching forward would not be related to the work injury of the L1-L2 disc protrusion.

related permanent restrictions assigned by Dr. Bolt placed Mr. Barker in the less than sedentary physical demand. Mr. Galloway noted that Mr. Barker had no transferable job skills. Mr. Galloway concluded that Mr. Barker was 100% vocationally disabled due to his work injury, considering his age, educational-vocational profile, lack of transferable job skills, permanent restrictions, and the local labor market.

Dr. Hankins similarly noted that Mr. Barker did not have a diploma or GED and lacked occupational licenses or certifications. Dr. Hankins likewise found Mr. Barker's past work history was skilled and required medium to heavy physical demands. Dr. Hankins's academic testing showed that Mr. Barker had a low average of intelligence and below average general learning ability. He tested at a second-grade reading level and fourth-grade math level. Due to his permanent restrictions, Dr. Hankins agreed that Mr. Barker lacked transferable job skills. Dr. Hankins concluded that Mr. Barker had a 98-99% permanent vocational disability.

As an example of which limited jobs Mr. Barker might qualify for, Dr. Hankins testified Mr. Barker could work part-time positions up to 6 hours per day as an unarmed gate guard. Dr. Hankins acknowledged that Mr. Barker would only qualify for unarmed, low-level positions requiring no emergency response or property patrol. On cross-examination, Dr. Hankins acknowledged that the 3 potential jobs he found in the local labor market required physical or educational requirements Mr. Barker did not possess.

When asked to address Dr. Hankins's assessment of a 98-99% vocational disability, Mr. Galloway said finding a job within that limited number of jobs would be statistically improbable. He further noted that Mr. Barker had a notable fall risk and would be a workplace hazard.

*Lay proof*

Mr. Barker testified he had no difficulties performing his job duties before his work injury. He received raises and bonuses for work performed. He denied difficulties with lifting, carrying, changing positions, climbing stairs, driving, or with his balance before the work injury. However, since his injury, his low back hurts, and his left leg goes numb causing him to fall. He is unable to lift or carry more than 20 to 30 pounds and must alternate between sitting and standing. He must lie down for four hours or more on most days. He has trouble pushing or pulling, crawling, or kneeling. He is unstable on his feet and must hold on to the handrail when climbing stairs. He cannot climb ladders because he is unsteady. He cannot drive more than 30 minutes and must stop to move around. He tried to help around the house and yard but had to stop without finishing. His pain is distracting, and he finds it difficult to stay on-task or focused.[4]

---

[4] Mr. Barker's wife testified consistently with Mr. Barker's testimony regarding the effect of his work injury on his activities of daily living.

Mr. Barker said he last worked September 15, 2022. He has had no income until he began receiving old-age Social Security Retirement benefits. He said he went to work after high school and worked all his life. He said he was not aware of any job that he could physically do. Mr. Kendrick disagreed, stating that no job tasks in the June 19, 2024 offer exceeded his permanent restrictions.

## Findings of Fact and Conclusions of Law

Mr. Barker must prove his entitlement to the requested benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2024).

### Temporary disability benefits

Mr. Barker first asked for additional temporary disability benefits. Because he was released to work with restrictions, he may be entitled to temporary partial disability benefits which are payable when an employee is capable of performing some work in his partially disabled condition. Tenn. Code Ann. § 50-6-207(2). Mr. Barker's entitlement to those benefits "hinges on the reasonableness of [Loudon County's] action in offering a light duty position and the reasonableness of [Mr. Barker] in declining the offer." *Frye v. Vincent Printing Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *16 (Aug. 2, 2016).

To determine reasonableness, Tennessee courts use an "analytical framework" similar to that used when deciding whether an employee has made a "meaningful return to work," and the Board noted that courts will have to consider a "variety of factual situations." *Id.* at *17.

Here, Loudon County offered modified duty on September 26, 2023, with a report date of October 9. The tasks included pressure washing equipment and picking up parts. Mr. Barker testified those tasks exceeded his restrictions, but Loudon County disagreed.

However, whether Mr. Barker could do the job or whether the job exceed his restrictions is immaterial because Dr. Bolt increased Mr. Barker's restrictions before the report date of October 9. Under the new restrictions, Mr. Barker was limited to: no overhead work, no outstretched arm use, no heavy gripping, no use of vibrating tools, alternate sitting/standing, no lifting over 5 pounds frequently or 20 pounds maximum, no stooping/bending/twisting, and no use of hazardous machinery.

Loudon County made another modified job offer on October 12, requiring Mr. Barker to deliver small equipment and perform inventory, maintenance, cleaning, and office work. Dr. Bolt stated that "Mr. Barker was unable to perform those jobs within the restrictions assigned on October 3, stating '[a]ppears no bending would restrict some items." Dr. Bolt explained the change in restrictions from September 18 to

6

October 3, stating, "P[atien]t clarified with me his limitations and work requirements which I was unaware of at the 9/18/23 visit."

Considering Mr. Barker's credible testimony and the testimony of Dr. Bolt, the Court finds that Mr. Barker acted reasonably when declining Loudon County's modified job offer. Loudon County's expectation that Mr. Barker could perform the modified duty without stooping, bending, or twisting was unreasonable.

Thus, based on a preponderance of the evidence, the Court holds that Mr. Barker is entitled to additional temporary partial disability benefits from September 29, 2023, through January 8, 2024, or $10,868.91. Loudon County is entitled to a credit for its overpayment of $2,608.32, reducing the lump-sum payment to $8,260.59. Mr. Barker's counsel is entitled to fees of 20% from this amount, or $1,652.12.

*Permanent disability*

Mr. Barker claimed he is permanently and totally disabled. When an employee's disability from a work-related injury is found to be permanent, the employee is entitled to permanent disability benefits based on the degree of vocational disability caused by the injury. *Braden v. Mohawk Ind., Inc.*, 2022 TN Wrk. App. Bd. LEXIS 11, at *21-22 (Mar. 1, 2022) (internal citations omitted). An employee may be found permanently and totally disabled when the work injury "totally incapacitates the employee from working at an occupation that brings the employee an income." *Id*.; Tenn. Code Ann. § 50-6-207(4)(B).

In assessing an employee's permanent vocational disability caused by a work injury, the Court can consider several factors, including the employee's medical impairment, job skills education, age, training, "job opportunities in the immediate and surrounding communities, and the availability of work suited for an individual with that particular disability." *Braden*, 2022 TN Wrk. App. Bd. LEXIS 11, at *21 (internal citations omitted). An employee's own assessment of his or her overall physical condition, including the ability or inability to return to gainful employment, "is competent testimony that should be considered." *Id*. at *21-22. The extent of an employee's vocational disability is a question of fact to be determined from both lay testimony and medical evidence. *Id*. at *22.

At the time of hearing, Mr. Barker was 65 years old and lacked a high school diploma or GED. His work history was skilled and ranged from a medium to heavy physical demand category. He suffered a 7% permanent impairment and was assigned significant permanent restrictions, which placed him in the less than sedentary physical demand category. The functional capacity evaluation noted that Mr. Barker was limited to part-time work. The evaluator further noted that Mr. Barker was a "high fall risk" and limited in his abilities to both stand and sit.

Mr. Galloway concluded that Mr. Barker was 100% vocationally disabled due to his

7

work injury considering his age, educational-vocational profile, lack of transferable job skills, permanent restrictions, and job opportunities in the local labor market. Dr. Hankins determined that Mr. Barker had a 98-99% permanent vocational disability. Dr. Hankins limited Mr. Barker's job opportunities to part-time positions up to 6 hours per day as an unarmed gate guard with no requirement for emergency response or property patrol.

Although Dr. Hankins contended Mr. Barker might qualify for 3 jobs in the local labor market, Dr. Hankins conceded on cross-examination that the jobs as described exceeded Mr. Barker's restrictions or education.

The Court concludes the preponderance of the evidence shows Mr. Barker is permanently and totally disabled from an occupation that brings him an income. The Court considered his medical impairment, significant permanent restrictions, and high fall risk, as well as his age, lack of a high school diploma or GED, and the lack of job opportunities in the local labor market within his restrictions.

Further, because Mr. Barker was injured fewer than 5 years before his eligibility for full Social Security retirement benefits, his permanent total disability award is limited to 260 weeks under section 50-6-207(4)(A)(i).

The parties agreed Mr. Barker was receiving old-age Social Security retirement benefits in the amount of $1,297.00 per month, or $299.30 per week. Applying section 50-6-207(4)(A)(i), Loudon County is entitled to an offset of 50% of the weekly amount, or $149.65. This reduces Mr. Barker's weekly compensation rate to $599.93. Therefore, Mr. Barker's award of permanent total disability benefits is $155,981.80. Loudon County shall pay benefits accrued from Mr. Barker's date of maximum medical improvement through the date of this order, or 47 weeks at $599.93, for a total lump-sum payment of $28,196.71. After, Loudon County shall pay periodic payments until the value of 260 weeks, less his attorney fees, which have been paid.

*Attorney Fees*

Under section 50-6-226(a)(1), the Court may award attorney fees not to exceed 20% of the employee's award. The Court finds that this case required considerable time and expertise on the part of all counsel. A fee of 20% is statutorily authorized and customary in cases brought before this Court. Therefore, the Court commutes 20% of the permanent disability award for Mr. Barker's attorney's fee, or $31,196.36. Loudon County's attorney's fees, as they exceed $10,000, are similarly approved.

After subtracting Mr. Barker's accrued benefits and attorney's fees, Mr. Barker is entitled to periodic permanent total disability benefits at the weekly rate of $453.47 until paid in full.

8

*Discretionary Costs*

Finally, Mr. Barker requested reimbursement of discretionary costs totaling $4,745.35:

- Fact-witness discovery deposition transcripts      $550.10
- Michael Galloway transcript      $467.15
- Dr. Bolt deposition fee      $1,050.00
- Dr. Bolt deposition transcript      $474.60
- Michael Galloway court appearance fee      $1,700.00
- Compensation Hearing court reporter split fee      $503.50

Section 50-6-239(c)(8) authorizes a trial court, in its discretion, to assess costs including reasonable fees for depositions of medical experts against the employer upon adjudication of the claim as compensable. Additionally, Tennessee Rules of Civil Procedure 54.04(2) (2024) allows the trial court to award reasonable and necessary discretionary costs for court reporter expenses for depositions or trials, and expert witness fees for depositions or trials.

Here, the Court holds that Mr. Barker is entitled to discretionary costs under Rule 54.04(2) and section 50-6-239 for his court reporter's fees and expert witness testimony fees. Loudon County shall reimburse Mr. Barker's discretionary costs in the amount of $4,745.35.

**IT IS, THEREFORE, ORDERED** as follows:

1. Loudon County shall furnish medical care for John Barker's injuries as required by Tennessee Code Annotated section 50-6-204. Dr. Bolt remains the authorized treating physician.

2. Loudon County shall pay additional temporary disability benefits from September 29, 2023, to January 8, 2024, in the amount of $8,260.59. Mr. Barker's attorney is entitled to fees of 20% from this award, or $1,652.12.

3. Loudon County shall pay Mr. Barker accrued permanent total disability benefits in the amount of $28,196.71.

4. Mr. Barker's counsel shall be paid a 20% attorney's fee under 50-6-226(a) or $31,196.36, in a lump sum.

5. Loudon County shall pay Mr. Barker periodic permanent total disability benefits beginning December 5, 2024, and continuing for 213 weeks at $453.47 per week.

6. Loudon County shall pay Mr. Barker's discretionary costs of $4,745.35.

9

7. Loudon County shall pay the $150.00 filing fee within 5 business days of entry of this order, for which execution may issue.

8. Loudon County shall file a Statistical Data Form (SD-2) within 10 business days of entry of this order.

9. Unless appealed, this Order shall become final 30 calendar days after entry.

**ENTERED December 6, 2024.**



**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. James Reed Deposition with exhibits
2. Elizabeth Schaffer Deposition with exhibits
3. Dr. Patrick Bolt Deposition
4. Michael Galloway Vocational Report with CV
5. Medical Records with Table of Contents
6. Wage Statement
7. Job Offers
8. Dylan Fehriback Rule 72 Declaration with exhibits
9. Bentley Hankins Vocational Report
10. Employer's Responses to Request for Admissions
11. First Report of Work Injury

## CERTIFICATE OF SERVICE

I certify that a copy of the order was sent as shown on December 6, 2024.

| Name | Mail | Email | Service sent to: |
|------|------|-------|------------------|
| Andrew J. Roberto, Employee's Attorney | | X | aroberto@brownandroberto.com |
| Houston Gunn, Employer's Attorney | | X | hmgunn@mijs.com |

*Penny Shrum*

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____ , certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____ , 20 ____ .

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                                RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support  $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____      (FMV) _____

Checking/Savings Acct.  $ _____

House                   $ _____      (FMV) _____

Other                   $ _____      Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____ .

_____
NOTARY PUBLIC

My Commission Expires:_____